**THE LAW OFFICE** *of* **CHRISTOPHER Q. DAVIS**

**WORKING SOLUTIONS NYC**

April 5, 2023

**By ECF**

Hon. Dan Aaron Polster
United States District Court
Northern District of Ohio

Re:  *Lundholm v. CrossCountry Mortgage, LLC*
     Civ. Action No. 1:23-cv-00285-DAP

Dear Judge Polster:

This Firm represents Plaintiff Paul Lundholm ("Lundholm") and the putative class and collective action members in the above referenced matter.  We write in accordance with your direction to provide the caselaw discussed during the March 30, 2023 status conference.

**Background**

Defendant CrossCountry Mortgage, LLC ("CCM") has attempted to implement a scheme under which its inside salespeople, including Plaintiff Paul Lundholm ("Lundholm"), worked for CCM for months without receiving any compensation.  Despite the fact that Lundholm did not qualify for any FLSA exemption, CCM paid him only an "unvested wage advance" for seven months of work, including weeks in which he worked more than forty hours.  CCM then sued Lundholm to force him to repay this compensation.  If CCM is successful, Lundholm would have worked for CCM for seven months for $0 compensation.  CCM's scheme is a common, unlawful plan that violates the FLSA and the laws of multiple states.  As discussed during the conference, Plaintiff intends to propose a notice and will request conditional certification of his FLSA claims.

CCM has also attempted to implement an unlawful dispute resolution scheme.  On his first day of employment, April 4, 2022, CCM required Lundholm to sign two agreements.  CCM required that Lundholm sign the "Outside Sales Loan Originator Employment Agreement" (Ex. A to Novak Aff., ECF No. 7-1) (the "Employment Agreement"), that includes the arbitration provision that CCM is attempting to enforce. But CCM also required that Lundholm sign its "Sign-On Bonus Agreement" which purports to require him to repay the "unvested wage advance."  (Exhibit A).

The terms of the Employment Agreement and the Sign-On Bonus Agreement conflict in material ways:

| Topic | Employment Agreement | Sign-On Bonus Agreement |
|---|---|---|
| Resolution of Disputes | As a condition of employment, Employee agrees and acknowledges that Company and Employee will utilize binding arbitration to resolve all disputes arising out of or relating to Employee's employment with Company. Both Company and Employee mutually agree that any claim, dispute and/or controversy that either Employee may have against Company (or its owners, directors, officers, managers, employees, and agents) or Company may have against Employee, arising from, related to, or having any relationship or connection whatsoever with Employee seeking employment with, employment by, or other association with Company, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA"). Included within the scope of this Arbitration Agreement are all disputes, whether based in tort, contract, statute, equitable law, or otherwise. | Employee intends to and hereby confers jurisdiction upon the courts of the State of Ohio and U.S. federal courts located within the State of Ohio to determine any dispute arising out of or related to this Agreement, including the enforcement and the breach hereof. |
| Who Pays Costs and Fees to resolve disputes? | Company shall pay the costs associated with the arbitration, except for those costs which the employee would routinely be required to pay in court litigation. …To the extent permissible under applicable law, each party shall be responsible for its own attorneys' fees, except that the Arbitrator may award attorneys' fees to the prevailing party consistent with applicable state or federal law | Employee agrees to pay all reasonable costs, expenses, interest, and legal fees incurred by the Company to enforce this Agreement. |

**CCM Waived Its Right to Compel Arbitration**

CCM terminated Lundholm's employment on November 2, 2022. On February 3, 2023, CCM sued Lundholm in the Cuyahoga County Court of Common Pleas.[1] CCM's suit claims that Lundholm breached his agreement to repay the "unvested wage advance" that CCM had paid him.

---

[1] Lundholm removed this case and it was assigned to Judge Oliver (Civ. Action No. 1:23-cv-000351-SO).

When it sued Lundholm, CCM waived its right to compel arbitration. A party that takes action that is inconsistent with arbitration abandons its right to compel arbitration. In *WorldSource Coil Coating, Inc. v. McGraw Const. Co.*, 946 F.2d 473, 479 (6th Cir. 1991), WorldSource hired McGraw as a construction contractor. The parties' contract included an arbitration clause. McGraw initially sued WorldSource in state court seeking injunctive relief, compensatory and punitive damages. After its motion for a preliminary injunction was denied, McGraw withdrew its suit and filed a claim in arbitration. WorldSource then sued McGraw in court and sought a stay of arbitration. McGraw filed a motion to compel arbitration. The district court denied the motion to compel and the Sixth Circuit affirmed holding: "Unless authorized by contract, submission of arbitrable issues in a judicial proceeding constitutes a waiver of the right to compel arbitration regardless of the prejudice to the other party. By petitioning the state court for relief that was more than 'interim or conservatory,' McGraw waived its right to compel arbitration." *Id.* at 479. The court explained "the key factor in determining whether a right to compel arbitration has been waived is the type of issues submitted to the court." When it sued Lundholm over "arbitrable issues" in Ohio State Court, CCM waived its right to compel arbitration. *See also Morgan v. Sundance, Inc.*, 212 L. Ed. 2d 753, 142 S. Ct. 1708, 1714 (2022) (agreeing with Sixth Circuit that prejudice is not required for finding of waiver of right to compel arbitration).

**The Loan Salespeople Who Make Up The Putative Collective Are Nonexempt**

Although CCM has not filed an answer, it will no doubt claim that the plaintiffs and putative collective action members were exempt from the minimum wage and overtime requirements of the FLSA because they were exempt "outside sales" employees.[2] Lundholm, and the individuals who have opted-in to this case to date, will testify that they were inside salespeople for CCM. The Plaintiffs will confirm that their primary job duties were to communicate with potential customers, via the phone or the internet, from their home offices or a CCM office.

While the U.S. Department of Labor ("DOL") has not updated the regulations that interpret the outside sales exemption since the onset of the COVID-19 pandemic, under the existing regulations the plaintiffs in this case are nonexempt. DOL regulations define an outside salesperson as an employee (1) whose "primary duty" is "making sales within the meaning of [29 U.S.C. § 203(k)]" or "obtaining orders or contracts for services"; and (2) who is "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a). The phrase "'customarily and regularly' means a frequency ...greater than occasional but ... less than constant." 29 C.F.R. § 541.701.

Two parts of the DOL regulations are particularly applicable in this case. First, telephone and internet communications with prospects or customers is not considered "outside sales" work,

---

[2] No other FLSA exemption is potentially applicable because CCM did not pay its loan salespeople a salary.

April 5, 2023

Page 4 of 5

unless it is incidental to sales generated through personal visits. 29 C.F.R. §541.502. The plaintiffs in this case will testify that, during the relevant period, their sales work was done almost exclusively on the phone and internet and they never were in person with most customers or prospects. Second, sales calls from an employee's home office do not constitute work "away from" the office: "any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business." *Id.*

In *Rakeman v. MLD Mortgage*, 16-cv-453, 2020 WL 13566471 (Dec. 18, 2020), the plaintiffs, like the plaintiffs in this case, were loan salespeople who were paid commissions only. The Defendant moved for summary judgment arguing that the plaintiffs were exempt outside salespeople. The court denied the motion, applying the regulations discussed above, and because there was evidence that the plaintiffs almost exclusively performed their sales duties from inside the Defendants' office or their home offices. Citing 29 C.F.R. § 541.502, the court commented that the Covid pandemic did not change the fact that the plaintiffs were nonexempt inside salespeople under the DOL regulations.

In *Scherer v BOK Financial Corp.*, Civ Action No. 4:21-CV-00449, 2023 WL 123792 (S.D. Tex. Jan. 6, 2023), the plaintiff was, again, a mortgage loan officer who sought overtime pay. The plaintiff sought summary judgment on the defendant's outside sales affirmative defense. The court rejected the plaintiffs' motion recognizing that she was not an outside salesperson during the pandemic, but noting that there was evidence that might support the application of the outside sales exemption before the pandemic. The plaintiffs in this case worked for CCM after the beginning of the pandemic in March 2020.[3]

**Reasonable Inferences About Hours Worked**

If CCM misclassified its loan salespeople as exempt employees, the failure to keep records of hours worked is CCM's responsibility. The plaintiffs are only required to submit evidence to allow the finder of fact to make just and reasonable inferences as to the time they worked. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946) ("[W]here the employer's records are inaccurate or inadequate and the employee cannot offer

---

[3] Plaintiffs allege that CCM willfully misclassified them as exempt outside salespeople. The fact that salespeople were not working "outside" after the onset of the pandemic was widely discussed in 2020. *See e.g.*, *Can Companies Use the Outside Sales Exemption During a Pandemic?*, Snell & Wilmer, December 15, 2020 (available at www.jdsupra.com/legalnews/can-companies-use-the-outside-sales-28952); *Class Action Trends Report*, Jackson Lewis, Fall 2020 ("Outside salespersons" who are not travelling. Due to stay-at-home orders, other travel restrictions, and closures of customer facilities, outside salespersons may no longer be spending the requisite amount of time away from their employer's place of business engaged in sales activities. Restrictions on travel and on visiting actual and prospective customers may therefore cause these salespersons to fall outside of the "outside salesperson" exemptions available under the FLSA and various state laws.")

convincing substitutes...an employee has caried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference."). *See McMasters v. Captain Friedt Tower Servs., LLC*, No. 5:22-CV-107, 2022 WL 17104543, at *4–5 (N.D. Ohio Nov. 21, 2022) (finding sworn testimony from plaintiffs about their typical weekly schedules sufficient to support award of damages for minimum wage and overtime sufficient where employer did not provide records); *citing Moran v. Al Basit LLC*, 788 F.3d 201, 205–06 (6th Cir. 2015) (permitting plaintiff-employee to establish his FLSA damages by demonstrating the hours he typically worked during the course of his employment for defendant-employer).

Respectfully submitted,

Brendan Sweeney