UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| PAUL LUNDHOLM, ROBERT DIRUSSO and MAX ROSA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CROSSCOUNTRY MORTGAGE, LLC,<br><br>Defendant. | CASE NO. 1:23-cv-00285-DAP<br><br>JUDGE DAN AARON POLSTER |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS**

Brendan Sweeney
Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, NY 10004

bsweeney@workingsolutionsnyc.com
*Attorneys for Plaintiffs.*

i

## PRELIMINARY STATEMENT

Defendant CrossCountry Mortgage, LLC ("CCM" or "Defendant") waived its right to compel arbitration when it sued Plaintiffs Paul Lundholm ("Lundholm") and Max Rosa ("Rosa") in Ohio State Court.[1] It is undisputed that the arbitration clause that CCM required its Loan Salespeople to sign is broad and covers all claims arising out of their employment. (ECF No. 7 ("CCM MOL") at pgs. 6-7). Despite this mutual agreement to arbitrate all claims, CCM elected to initiate litigation against Lundholm and Rosa claiming that they were obligated to repay wages (an "unvested wage advance.)" CCM's claims for repayment of wages are claims that arose out of the employment relationship and were covered by the broad arbitration provision that CCM drafted. Allowing CCM to change course, and forcing Lundholm and Rosa to pursue their claims challenging the legality of the Sign-on Bonus Agreement in arbitration, would directly contravene United States Supreme Court and Sixth Circuit precedent.

The Court should also deny CCM's Motion to Compel because CCM cannot establish that any individual who signed both its Employment Agreement and its Sign-on Bonus Agreement entered into an enforceable arbitration agreement. There is an irreconcilable conflict between the dispute resolution provisions of the two agreements. Accordingly, there was no "meeting of the minds" with respect to an agreement to arbitrate with any Plaintiff or potential plaintiff.

Alternatively, in light of the fact that both agreements include "merger" clauses, the court should enforce the agreement that was signed second. Named Plaintiffs Lundholm and

---

[1] From 2015 to the present, CCM has sued more than 70 former employees in Cuyahoga County Court of Common Pleas.

Bob DiRusso ("DiRusso") and opt-in Plaintiff Todd Baker ("Baker") executed Sign-on Bonus Agreements after they executed the Employment Agreement. By its terms, the Sign-on Bonus Agreement is the operative agreement and it dictates that the disputes in this case must be resolved in court.

## BACKGROUND

### I. Plaintiff Lundholm

CCM recruited Lundholm to leave a position with Wells Fargo and accept employment as an "Outside Loan Originator/Senior Loan Officer." (June 3, 2023 Declaration of Paul Lundholm, ECF NO. 27-1, hereinafter "Lundholm Dec." ¶ 5). CCM offered Lundholm a "sign-on bonus" that it subsequently characterized as an "unvested wage advance." (Lundholm Dec. ¶ 6). Lundholm resigned from Wells Fargo and started work with CCM on April 4, 2022. (*Id.* ¶ 8).

CCM required Lundholm to sign two agreements around the time he commenced employment. Documents produced by CCM in discovery show that Lundholm executed CCM's "Outside Sales Loan Originator Employment Agreement" (the "Employment Agreement") at 3:49 p.m. on April 4, 2022. (Sweeney Dec. Att. 1). Lundholm executed CCM's "Sign-On Bonus Agreement" at 11:40 a.m. on April 5, 2022. (Sweeney Dec. Att. 2). Lundholm did not understand that CCM had required him to agree to resolve disputes in arbitration (in the Employment Agreement) and in court (in the Sign-On Bonus Agreement). (Lundholm Dec. ¶ 18).

On February 13, 2023, CCM sued Lundholm in the Court of Common Pleas of Cuyahoga County, Ohio. (Lundholm Dec. ¶ 19, Att. D). CCM's lawsuit is based on the Sign-on Bonus Agreement. (Lundholm Dec. Att. D ¶ 5). CCM sought "judgment against [Lundholm] for damages in the amount of $81,371.83 plus interest, together with the costs of this action." *Id.*

## II. Plaintiff Rosa

CCM recruited Rosa to leave a position with a competitor and accept employment with CCM. (June 6, 2023 Declaration of Maxwell A. Rosa, ECF No. 27-14, hereinafter "Rosa Dec." ¶ 5). CCM offered Rosa a "sign-on bonus." (Rosa Dec. ¶ 6). Rosa commenced employment with CCM on July 1, 2021. (*Id.* ¶ 7).

CCM required Rosa to sign two agreements around the time he commenced employment. Documents produced by CCM in discovery show that Rosa executed the Sign-on Bonus Agreement at 12:17 p.m. on July 1, 2021. (Sweeney Dec. Att. 3). Rosa executed the Employment Agreement later on the same day at 2:37 p.m. (Sweeney Dec. Att. 4). Rosa did not understand that CCM had required him to agree to resolve disputes in arbitration (in the Employment Agreement) and in court (in the Sign-On Bonus Agreement). (Rosa Dec. ¶ 16).

On March 1, 2023, CCM sued Rosa in the Court of Common Pleas of Cuyahoga County, Ohio. (Rosa Dec. ¶ 17, Att. D). CCM's lawsuit is based on the Sign-on Bonus Agreement. (Rosa Dec. Att. D ¶ 5). CCM sought "judgment against [Rosa] for damages in the amount of $119,217.81 plus interest, together with the costs of this action." *Id.*

## III. Plaintiff DiRusso

CCM recruited DiRusso to work as a Loan Originator in September 2020. (June 2, 2023 Declaration of Robert DiRusso, ECF No. 27-6, hereinafter "DiRusso Dec." ¶ 4). CCM offered DiRusso a "sign-on bonus." (DiRusso Dec. ¶ 6). DiRusso started work with CCM on October 1, 2020. (*Id.* ¶ 9).

CCM required DiRusso to sign two agreements around the time he commenced employment. (*Id.* ¶ 8). Documents produced by CCM in discovery show that DiRusso executed

the Employment Agreement on October 2, 2020, at 3:34 p.m. (Sweeney Dec. Att. 5). DiRusso later executed the Sign-on Bonus Agreement on October 3, 2020, at 10:06 a.m. (Sweeney Dec. Att. 6). CCM later sent DiRusso a revised Sign-On Bonus Agreement which DiRusso executed on October 29, 2020, at 9:22 a.m. (Sweeney Dec. Att. 7). DiRusso did not understand that CCM had required him to agree to resolve disputes in arbitration (in the Employment Agreement) and in court (in the Sign-On Bonus Agreements). (DiRusso Dec. ¶ 8).

After CCM terminated DiRusso's employment it deducted $2,621.00 of earned commissions from his final check and demanded he pay CCM an additional $27,379.00. (DiRusso Dec. ¶ 16, Att. D).

## IV. Opt-in Plaintiff Baker

CCM recruited Baker to accept employment as a Senior Loan Officer in 2021. (June 6, 2023, Declaration of Todd Baker, ECF NO. 27-11, hereinafter "Baker Dec." ¶ 5). CCM offered Baker a "sign-on bonus." (Baker Dec. ¶ 6).

CCM required Baker to sign two agreements around the time he commenced employment. Documents produced by CCM in discovery show that Baker executed CCM's Employment Agreement at 12:48 p.m. on December 29, 2021. (Sweeney Dec. Att. 8). Baker executed CCM's Sign-On Bonus Agreement five days later on January 3, 2022. (Sweeney Dec. Att. 9). Baker did not understand that CCM had required him to agree to resolve disputes in arbitration (in the Employment Agreement) and in court (in the Sign-On Bonus Agreement). (Baker Dec. ¶ 14).

# ARGUMENT

**I.    CCM Waived Its Right to Compel Lundholm or Rosa To Arbitrate Their Claims**

Prior to the filing of this lawsuit, CCM chose to sue Lundholm and Rosa in Ohio State Court.  By doing so, CCM waived its right to compel arbitration.

A party that takes action that is inconsistent with its right to compel arbitration abandons that right. On May 23, 2022, the United States Supreme Court made clear that in situations like this one, the focus is solely "on the actions of the person who held the [arbitration] right" and whether there was "the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance,* 142 S.Ct. 1708, 1713 (2022).  The Court rejected decisions that put weight on the general policy favoring arbitration and required a party claiming waiver to show prejudice.  Courts are not permitted to create rules favoring arbitration contracts but, instead courts may only "place [arbitration] agreements upon the same footing as other contracts," including with regard to waiver. *Id.* (*citing Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010)).  *Morgan* instructs that arbitration contracts are to be treated like all other contracts, and not benefit from a "bespoke rule of waiver" favoring arbitration over litigation. *Id.*

A party acts inconsistent with the right to compel arbitration when it elects to pursue arbitrable claims in court. *See Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) (Courts presume that a party has waived its right to arbitration when it has "elect[ed] to proceed before a nonarbitral tribunal for the resolution of a contractual dispute"); *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 777 (D.C. Cir. 1987) (same).

The Sixth Circuit's decision in *WorldSource Coil Coating, Inc. v. McGraw Const. Co.*, 946 F.2d 473, 479 (6th Cir. 1991), is consistent with *Morgan*.  WorldSource hired McGraw as a

construction contractor under a contract that included an arbitration clause. McGraw initially sued WorldSource in state court seeking injunctive relief, compensatory and punitive damages. After its motion for a preliminary injunction was denied, McGraw withdrew its suit and filed a claim in arbitration. WorldSource then sued McGraw in court and sought a stay of arbitration. McGraw filed a motion to compel arbitration. The district court denied the motion to compel arbitration and the Sixth Circuit affirmed holding: "Unless authorized by contract, submission of arbitrable issues in a judicial proceeding constitutes a waiver of the right to compel arbitration regardless of the prejudice to the other party. By petitioning the state court for relief that was more than 'interim or conservatory,' McGraw waived its right to compel arbitration." *Id.* at 479.

CCM elected to sue former employees in court at least seventy times from 2015 to the present.[2] CCM's Motion to Compel does not claim that its strategy of using litigation, as opposed to arbitration, to force former employees to repay wages was an oversight or that it was unaware of the arbitration provision it required employees to sign. It is obvious that CCM chose to pursue claims for repayment of wages in court because CCM was not required to pay the costs of arbitration and could seek to impose costs and fees on employees when it sued under the Sign-on Bonus Agreement. CCM's decision to sue Lundholm and Rosa in court was a strategic decision that is inconsistent with the right to compel arbitration.

In *WorldSource,* the court explained "the key factor in determining whether a right to compel arbitration has been waived is the type of issues submitted to the court." *WorldSource* at 477. CCM sued Lundholm and Rosa for breach of agreements to repay an "unvested wage advance" to CCM. The arbitration provision that CCM drafted is incredibly broad. It requires

---

[2] Sweeney Dec. ¶ 10.

that "any claim, dispute and/or controversy" that the "Company may have against Employee, arising from, related to, or having any relationship or connection whatsoever with Employee … shall be submitted to and determined exclusively by binding arbitration." Just in case the belt wasn't enough, CCM added suspenders: "Included within the scope of this Arbitration Agreement are all disputes, whether based in tort, contract, statute, equitable law, or otherwise."

The issues that CCM submitted to the court in its Ohio State Court actions against Lundholm, Rosa and other employees are "arbitrable issues." By knowingly electing to ask the court to decide arbitrable issues, CCM waived its right to compel Lundholm or Rosa to address employment-related disputes in arbitration.

## II. CCM Cannot Establish That Any Loan Salesperson Who Was Required to Sign Both the Arbitration Agreement and the Sign-On Bonus Agreement Agreed to Arbitrate Disputes

### A. Relevant Provisions

As discussed above, CCM routinely required Loan Salespeople to sign both the Employment Agreement and the Sign-On Bonus Agreement at, or near, the commencement of employment. These agreements directly conflict on the issue of resolution of disputes.

Section 5.19 of the Employment Agreement states:

> As a condition of employment, Employee agrees and acknowledges that Company and Employee will utilize binding arbitration to resolve all disputes arising out of or relating to Employee's employment with Company. Both Company and Employee mutually agree that any claim, dispute and/or controversy that either Employee may have against Company (or its owners, directors, officers, managers, employees, and agents) or Company may have against Employee, arising from, related to, or having any relationship or connection whatsoever with Employee seeking employment with, employment by, or other association with Company, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA"). Included within the scope of this Arbitration Agreement are all disputes, whether based in tort, contract, statute, equitable law, or otherwise.

The Sign-on Bonus Agreement directly contradicts the dispute resolution provision in Section 5.19 of the Employment Agreement:

> Employee intends to and hereby confers jurisdiction upon the courts of the State of Ohio and U.S. federal courts located within the State of Ohio to determine any dispute arising out of or related to this Agreement, including the enforcement and the breach hereof.

The agreements also conflict with respect to who will pay the costs for resolving disputes. The Employment Agreement informs employees:

> Company shall pay the costs associated with the arbitration, except for those costs which the employee would routinely be required to pay in court litigation.

The Sign-on Bonus Agreement again contradicts the Employment Agreement when it states:

> Employee agrees to pay all reasonable costs, expenses, interest, and legal fees incurred by the Company to enforce this Agreement.

Both Agreements have "merger" clauses. Section 5.13 of the Employment Agreement states:

> <u>Entire Agreement</u>. This Agreement sets forth all the promises, covenants, agreements and conditions between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, expressed or implied, oral, written or otherwise, except as set forth herein.

Paragraph 6 of the Sign-on Bonus Agreement states:

> **<u>ACKNOWLEDGEMENTS AND INTEGRATION</u>**. . . . Employee also understands and acknowledges that this Agreement is the entire agreement between Employee and Company with respect to this subject matter, and Employee acknowledges that Company has not made any other statements, promises or commitments of any kind (written or oral) to cause Employee to agree to the terms of this Agreement.

B.      **Applicable Law**

The court should apply Ohio law to determine whether a valid agreement to arbitrate exists between CCM and the Plaintiffs. *VIP, Inc. v. KYB Corp.*, 951 F.3d 377, 380 (6th Cir. 2020); *Platte River Ins. Co. v. Dignity Health*, No. C-12-2356 EMC, 2013 U.S. Dist. LEXIS 38471, at *9-*10 (N.D. Cal. Mar. 19, 2013); *see* 9 U.S.C., §§ 4, 205-06.  A "meeting of the minds" as to the essential terms is a required element to establish the existence of a contract under Ohio law. *PNC Bank, N.A. v. Springboro Medical Arts, Inc., et al.*, 41 N.E.3d 145 (Ohio Ct. App. 2015).  If the court concludes that there is "an ambiguity in the contract . . . that ambiguity must be construed against the drafting party." *Ottery v. Bland*, 42 Ohio App. 3d 85, 87 (1987).

C.      **CCM Cannot Establish A "Meeting of the Minds" Regarding Dispute Resolution**

As a result of CCM's requirement that employees execute conflicting agreements, it cannot establish that there was a "meeting of the minds" with respect to resolving disputes through arbitration.  It is impossible to harmonize the dispute resolution provisions of CCM's Employment Agreement and its Sign-on Bonus Agreement.  The breadth of the Employment Agreement's arbitration provision means that any disputes related to a Loan Officer's employment or wages is covered by the arbitration provision.  But the Sign-on Bonus Agreement states that disputes about the "unvested wage advance" must be decided in court. CCM, as the party that drafted the agreements, each of which say they are the "entire agreement" between the parties, does not have the right to compel any former employee who executed both agreements to pursue claims in arbitration.

The Tenth Circuit's decision in *Bellman v. i3Carbon, LLC* 563 Fed.App. 608, 610 (10th Cir. 2014) is directly on point.  In *Bellman*, the defendant required investors to agree to an

"Operating Agreement" that included an arbitration provision as well as a "Subscription Agreement" that stated all disputes arising out of the agreement shall be resolved "by a court of competent civil jurisdiction sitting in Denver, Colorado and nowhere else." Applying "ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute," the court concluded there was no meeting of the minds on an agreement to arbitrate. *Id.* at 613 (citations omitted). The Court of Appeals agreed with the district court that that "the defendant has presented no evidence that creates a genuine issue of material fact as to whether or not there was a meeting of the minds and an agreement binding on the parties to arbitrate the disputes that have arisen between them." *See also, Ragab v. Howard*, 841 F.3d 1134, 1137-38 (10th Cir. 2016) (no meeting of the minds where parties entered into a series of agreements with conflicting dispute resolution provisions).

The Fifth Circuit reached a similar conclusion in *O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 Fed. Appx. 308, 312 (5th Cir. 2020). In *O'Shaughnessy*, the plaintiff joined the defendant's company as a member by signing an agreement ("Agreement") containing a "'Jurisdiction and Choice of Law clause" stipulating that:

> Any legal action concerning the Agreement will be brought in the state and federal courts located in Salt Lake City, Utah.

*Id.* at 309. The Agreement incorporated by reference a Policies and Procedures ("P&Ps") document. *Id.* Contradicting the Agreement, the P&Ps provided that:

> any controversy or claim arising out of or relating to the Agreement, or the breach thereof, will be settled by arbitration. The parties waive all rights to trial by jury or to any court. The arbitration will be filed with, and administered by, the American Arbitration Association ('AAA') or Judicial Arbitration and Mediation Services ( JAMS) under their respective rules and procedures.

*Id*. When the plaintiff filed a putative class action, the defendant moved to compel arbitration relying on the P&Ps. *Id*. at 310.  Plaintiff opposed on the grounds that "an irreconcilable conflict existed" between the dispute resolution provisions of the Agreement and the P&P.  Plaintiff argued "there was no 'meeting of the minds' between the parties with regard to arbitration." She also contended that ambiguities in the various contracts "should be construed against the drafter." *Id*.  The Magistrate Judge recommended to the district court that the motion to compel arbitration be denied "on grounds that the Jurisdiction and Choice of Law clause in the Agreement and the arbitration clause in the P&Ps irreconcilably conflicted with each other and could not be harmonized." *Id*. The Magistrate concluded there was no "meeting of the minds" between the parties regarding arbitration, and the district court agreed. *Id*. at 310-11. The Fifth affirmed the lower court's ruling, citing both *Ragab* as well as other similar decisions also from the 10th Circuit. *Id*. at 311-12.

### D.    The Sign-on Bonus Agreement Supersedes the Employment Agreement

CCM had Lundholm, DiRusso and Baker sign the Sign-on Bonus Agreement after it required them to sign the Employment Agreement.  The Sign-on Bonus Agreement states that it is the "entire agreement" between the parties and "the courts of the State of Ohio and U.S. federal courts located within the State of Ohio" have jurisdiction "to determine any dispute arising out of or related to" the Sign-on Bonus Agreement.  The core claim in this case is that the Sign-on Bonus Agreement violates the FLSA.  The Sign-on Bonus Agreement – the operative agreement between CCM, Lundholm, DiRusso and Baker – dictates that such dispute must be resolved in court.  Where the Sign-on Bonus Agreement was executed after the Employment

Agreement, it would be entirely improper for the court to contravene this agreement and force disputes about the Sign-on Bonus Agreement into arbitration.

Under Ohio law, courts attempt to construe multiple contracts together. *Mazzella Lifting Techs., Inc. v. Farmer*, No. 1:16 CV 395, 2017 U.S. Dist. LEXIS 216808, at *10 (N.D. Ohio Jan. 20, 2017).  At times, however, that is not possible.  *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 685 (6th Cir. 2000).  Where the terms of two agreements irreconcilably conflict, and especially where both contracts include "merger" clauses, the contract that was signed second controls. *See Id.*; *Duskin v. Pa.-Central Airlines Corp.,* 167 F.2d 727, 728-729 (6th Cir. 1948).

In *Duskin,* for example, an employee was required to sign both a general employment contract and a second contract that was specific to his position. 167 F.2d at 728-729. The general employment contract stated that the workmen's compensation law of the state in which the employee resided governed. *Id*. The position-specific contract, however, stated that Pennsylvania law applied to workmen's compensation claims. *Id*. The court in *Duskin* was unable to harmonize the directly conflicting contract terms. *Id*. at 729. The court stated:

> There can be no doubt that the last contract signed by Duskin superseded the former one. 'A subsequent contract completely covering the same subject-matter, and made by the same parties, as an earlier agreement, but containing terms inconsistent with the former contract, so that the two cannot stand together, rescinds, supersedes, and is substituted for the earlier contract, and becomes the only agreement of the parties on the subject.

*Id.*; *see also*, *Lincoln Elec.*, 210 F.3d at 685. ("additional terms supersede the original terms to the extent the two are contradictory.").

In *Summit Contractors, Inc. v. Legacy Corner, L.L.C.*, 147 F. App'x 798, 802 (10th Cir. 2005), the court denied a motion to compel arbitration because the contract that included an

arbitration clause was superseded by a contract that included a forum selection clause. The court stated that "both documents contain merger clauses" and "[t]ypically, merger clauses are strong evidence that the parties did not intend to include terms not expressly incorporated into the document containing the clause." In *Summit*, the second contract between the parties did not reference the earlier contract that included the arbitration provision but, instead, included a forum selection clause that specified the court where disputes must be resolved. The court concluded: "[g]iven the express language of the documents, we hold that the parties did not intend to arbitrate disputes arising under the Agreement."

The court should reach precisely the same conclusion here. The Sign-on Bonus Agreement states that disputes must be resolved in Ohio courts. As a result, there is no reason to conclude that the parties intended to resolve disputes about the sign-on bonus agreement in arbitration.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant CrossCountry Mortgage, LLC's Motion to Compel Arbitration and to Dismiss in its entirety.

Respectfully submitted,

Dated: October 27, 2023
New York, New York

*Brendan Sweeney*
_____
Brendan Sweeney
Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, NY 10004
bsweeney@workingsolutionsnyc.com
*Attorneys for Plaintiffs.*