IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| PAUL LUNDHOLM, individually and on behalf of all others similarly situated, et al., | ) ) ) CASE NO. 1:23-CV-00285-DAP ) ) JUDGE DAN A. POLSTER |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CROSSCOUNTRY MORTGAGE, LLC, | ) ) |
| Defendant. | ) |

**DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S REPLY IN SUPPORT OF ITS RENEWED MOTION TO COMPEL ARBITRATION AND TO DISMISS**

The Court should grant Defendant CrossCountry Mortgage, LLC's ("***CCM***") *Renewed Motion to Compel Arbitration and to Dismiss* (ECF. No. 25) (Jun. 2, 2023) because:

- ➢ Plaintiffs (which incorporates all named and opt-ins) contractually waived their right to bring or participate in any class or collective action;
- ➢ Plaintiffs contractually agreed to arbitrate the claims against CCM that are before this Court; and
- ➢ CCM acted consistently with its right to enforce arbitration.

Plaintiffs, through their *Opposition to CCM's Motion to Compel Arbitration and to Dismiss* ("***Opposition***") (ECF. No. 47.), have not provided any evidence to dispute any of the above, and dismissal of their claims is appropriate.[1]

---

[1] Plaintiffs fail to even address CCM's argument that they contractually waived their right to bring or participate in any class or collective action, requiring dismissal of all individuals other than Mr. Lundholm.

1

I. **PLAINTIFFS WAIVED THEIR RIGHT TO BRING OR PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION**

Plaintiffs each signed an employment agreement ("*Employment Agreement*") that contains a class and collective action waiver that states:

> **COMPANY AND EMPLOYEE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS REPRESENTATIVE/MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**

*See, e.g., Employment Agreement* (ECF. No. 7, at Ex. 1-A, § 5.19; ECF No. 21 at Ex. 1-A, § 6.18) (bold and all caps in original).[2]

Plaintiffs do not contest this provision or otherwise dispute that they waived their right to bring or participate in any class or collective action against CCM pursuant to their employment agreements. Here the class/collective waiver is in a section of the Employment Agreement entitled "Arbitration; Jury Waiver; Collective Action Waiver." (*See, e.g.*, ECF. No. 7, at Ex. 1-A, § 5.19; ECF No. 21 at Ex. 1-A, § 6.18.) The collective action waiver and the arbitration provisions are two contract terms that are conceptually distinct, and even when appearing in the same contract section are independent provisions. *See Fischer v. Instant Checkmate LLC,* No. 19 C 4892, 2022 U.S. Dist. LEXIS 59143, at *11 (N.D. Ill. Mar. 31, 2022). Accordingly, regardless of the enforceability of any arbitration provision, the case should be dismissed as to all Plaintiffs except Mr. Lundholm individually, because each waived their right to bring or participate in this putative class/collective action. *See Madhat v. Lipsey*

---

[2] Plaintiffs' arbitration and class/collection action waiver provisions are identical, regardless of which section the provisions appear in their individual agreements.

2

*Communs., LLC,* N.D. Ohio No. 5:20-cv-764, 2020 U.S. Dist. LEXIS 161272, at *25 (Sep. 3, 2020) (holding that plaintiffs had no right to proceed in the action as a collective due to their class/collective action waiver).

## II. PLAINTIFFS AGREED TO ARBITRATE THEIR CLAIMS

All Plaintiffs, including Mr. Lundholm, clearly and unambiguously agreed to arbitrate their claims against CCM pursuant to the arbitration provision contained in each of their Employment Agreements. Each individual Employment Agreement provides that:

> As a condition of employment, Employee agrees and acknowledges that Company and Employee will utilize binding arbitration to resolve all disputes arising out of or relating to Employee's employment with Company. Both Company and Employee mutually agree that any claim, dispute and/or controversy that either Employee may have against Company (or its owners, directors, officers, managers, employees, and agents) or Company may have against Employee, arising from, related to, or having any relationship or connection whatsoever with Employee seeking employment with, employment by, or other association with Company, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA"). Included within the scope of this Arbitration Agreement are all disputes, whether based in tort, contract, statute, equitable law, or otherwise.

*See, e.g.,* ECF. No. 7, at Ex. 1-A, § 5.19; ECF. No. 21 at Ex. 1-A § 6.18.

### A. The Collection Provision of the Sign-On Bonus Agreement does not Contradict the Arbitration Requirement.

Plaintiffs all also executed a Sign-On Bonus Agreement that conferred jurisdiction to courts in Ohio solely **for collection actions and disputes related to the payment made under that agreement**. That agreement does not eliminate the arbitration requirement for claims/disputes relating to Plaintiffs' employment. Pursuant to the specific agreement of the

3

parties, suits related to Plaintiffs' employment with CCM must be determined by arbitration.

Having a separate agreement, giving the court jurisdiction over specific limited collection claims, does not render the arbitration agreement unenforceable; it simply means that for a collection action there is a contractual exception to arbitration. Accordingly, the two agreements do no conflict and are thus unambiguous. This interpretation gives effect to each provision of both the Employment Agreement and Sign-On Bonus Agreement and harmonizes the two agreements together.

Plaintiffs' sole focus on the Sign-On Bonus Agreement is a red herring because the Sign-On Bonus Agreement and the Employment Agreement are both clear on the dispute resolution process – the Sign-On Bonus Agreement does not "cancel out" the Employment Agreement or create any ambiguity regarding the requirement that Plaintiffs must arbitrate their FLSA and state law wage claims.

Under Ohio law, which governs both the Employment Agreement and the Sign-On Bonus Agreement, a court must give effect to each provision of a contract. *Gaffin v. Schumacher Homes of Cincinnati, Inc.*, 2013-Ohio-992, ¶ 11 (Ct. App.) (enforcing arbitration clause), *citing Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 1997-Ohio-202, 78 Ohio St. 3d 353, 353, 678 N.E.2d 519, 525). The intent of the parties to a contract is presumed from the language used in a contract. *Wells Fargo Bank, N.A. v. Allstate Ins. Co.*, 290 F. Supp. 3d 715, 722 (N.D. Ohio 2017). When interpreting a contract:

4

> Courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give another construction that would give it meaning and purpose, then the latter construction must obtain.

*Shanesville Invs. LLC v. Eclipse Res. I, LP*, 358 F. Supp. 3d 665, 675 (S.D. Ohio 2018), *citing State v. Bethel*, 110 Ohio St.3d 416, 423, 2006-Ohio-4853, 854 N.E.2d 150 (2006). Importantly, when there are multiple agreements:

> A writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole. Multiple documents should be construed together if they are part of the same transaction.

*Gaffin v. Schumacher Homes of Cincinnati, Inc.*, 2013-Ohio-992, ¶ 11 (Ct. App.) (internal citations omitted).

When read together to give effect to each and every provision of both the Sign-On Bonus Agreement and the Employment Agreement, and to harmonize both agreements, it is clear that Plaintiffs' claims in this lawsuit are arbitrable under the broad arbitration clause contained in the Employment Agreement. Plaintiffs' argument that the Sign-On Bonus agreement either supersedes or conflicts with the Employment Agreement is an incorrect interpretation of the contractual provisions and contrary to Ohio law. When a party seeking to avoid arbitration contends that the clause providing for arbitration has been superseded by some other agreement, "the presumptions favoring arbitrability must be negated expressly or by clear implication." *Zandford v. Prudential-Bache Sec., Inc.*, 112 F.3d 723, 727 (4th Cir.1997), *quoting Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*,

5

430 U.S. 243, 255, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). Plaintiffs fail to show anything to support the proposition that the arbitration provisions of the Employment Agreement were expressly or clearly negated.

### B. There was a Meeting of the Minds between CCM and Plaintiffs regarding Arbitration.

Plaintiffs each signed an Employment Agreement with an arbitration provision. Thus, their assertion that they did not understand they agreed to resolve disputes in arbitration is rebutted by the plain language of the Employment Agreements they signed.

Plaintiffs' referenced case law relating to meeting of the minds is not relevant. Initially, Plaintiffs each certified, in the bolded provision of the Employment Agreement right above their signature that they had read, understood, and agreed to be legally bound to all the terms of the agreement. (*See, e.g.,* ECF. No. 7, Ex. 1-A at p. 12; ECF No. 21, Ex. 1-A at pp. 12-13.) Further, contrary to the facts before this Court, in *Bellman*, the case cited by the Plaintiffs, the Tenth Circuit held that there was no agreement to arbitrate when the plaintiffs signed a subscription agreement with a forum selection clause but did not sign an operating agreement that contained an arbitration provision. *Bellman v. i3Carbon, Ltd. Liab. Co.*, 563 F. App'x 608, 614 (10th Cir. 2014); *compare Ellington v. Hayward Baker*, Inc., No. 2:18-cv-3436-DCN, 2019 U.S. Dist. LEXIS 31851, at *16 (D.S.C. Feb. 28, 2019) (distinguishing *Bellman*). When the defendant moved to enforce arbitration under the unsigned operating agreement, the court held there was no meeting of the minds because the parties never signed the agreement with the arbitration provision. *Id*. 563 F. App'x at 615 ("Defendants

6

have failed to articulate why the Operating Agreement (including its arbitration provision) – which neither of the parties signed - should be binding, but the Subscription Agreement – which was contained in the same binder and actually signed by Mr. Samuelson- should not be enforced.").[3]

Here, unlike in *Bellman*, Plaintiffs do not dispute that they executed their Employment Agreements which contain the arbitration provision. As Plaintiffs signed, and acknowledged reading and understanding their Employment Agreements, they are bound to the arbitration provision to which they agreed.

### C. The Order that the Employment Agreement and Sign-On Bonus Agreement were Signed has no Effect on the Enforceability of the Employment Agreement

Under Ohio law, the order the agreements were signed has no effect on the enforceability of the agreement to arbitrate. In *Seyfried v. O'Brien*, 2017-Ohio-286, ¶ 25, 81 N.E.3d 961, 968 (Ct. App.), a plaintiff signed an arbitration agreement and thereafter signed a purchase agreement "moments apart, not separated by any meaningful lapse of time." The Court recognized that the agreements were part of the same transaction. *Id*. Although both agreements had a merger clause, the Court held the purchase agreement only supplemented and did not supersede the arbitration agreement because the arbitration

---

[3] Likewise, *O'Shaughnessy v. Young Living Essential Oils, L.C.* 810 Fed Appx. 308 (5th Cir. 2020) is distinguishable. There, applying Utah law, the plaintiff executed a single agreement that stated disputes were to be brought in court, but that agreement incorporated by reference a separate agreement that contained an arbitration clause. *Id.*, 810 Fed Appx. at 309. The operative agreement in *O'Shaughnessy* was in direct conflict with itself as it had clauses both requiring arbitration but also requiring resolving disputes in court. *Id.*

agreement would be completely meaningless under the plaintiffs' interpretation. *Id.*, 81 N.E.3d at 969.

Here, like in *Seyfried*, when reading both the Employment Agreement and Sign-On Bonus Agreement together it is clear that the arbitration agreement is not void as a result of the existence, or by the timing of signing, of the Sign-On Bonus Agreement.

Plaintiff's reliance on the 1948 *Duskin* case (long before contracts could be accepted electronically) is equally inapplicable. In *Duskin*, the two contracts covered the exact same subject matter, and therefore the court found that the subsequent contract superseded the first. *Duskin v. Pa.-Central Airlines Corp.*, 167 F.2d 727, 729 (6th Cir. 1948). Likewise, Plaintiffs' reliance on *Summit Contractors, Inc. v. Legacy Corner, L.L.C.*, is not applicable. In *Summit*, a construction contract included an arbitration clause, while another contract that also covered the same manner and method to pay the contractor included a forum selection clause that said any suit from that agreement "shall be brought in a court." *Summit Contractors, Inc. v. Legacy Corner, L.L.C.*, 147 F. App'x 798, 802 (10th Cir. 2005). The two contradictory documents also contained merger clauses and therefore, directly conflict. *Id.* at 147 F. App'x at 799-800. Here the contracts are not identical and do not conflict.

### III.  CCM ACTED CONSISTENTLY WITH ITS RIGHT TO COMPEL ARBITRATION

CCM acted consistently with its right to compel arbitration, and it is undisputed that Plaintiffs each executed an Employment Agreement individually and agreed to arbitrate "all disputes arising out of or relating to [their] employment with [CCM]." See, e.g., ECF.

8

No. 7, at Ex. 1-A, §5.19. CCM in no way waived its right to compel arbitration against any of the Plaintiffs.

Federal law controls whether a party waived its right to arbitration. *See KenAmerican Res., Inc. v. Potter Grandchildren, LLC*, 916 F. Supp. 2d 799, 800 (E.D. Ky. 2013); *see also Dantz v. Am. Apple Grp., LLC*, 123 F. App'x 702, 707 (6th Cir. 2005) (applying Ohio law to the contractual enforceability of the arbitration agreement but federal law to the issue of waiver). A waiver of the right to arbitration is "not to be lightly inferred." *See Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 956 (N.D. Ohio 2009) (*quoting MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001). The party seeking to prove waiver bears a heavy burden of proof. *Id.*

Generally, a right to arbitrate may be waived "when the party actively participates in litigation or acts inconsistently with its rights to proceed with arbitration." *Systran Fin. Svc. Corp. v. Giant Cement Holding, Inc.*, 252 F. Supp. 2d 500, 506 (N.D. Ohio 2003) (*quoting Uwaydah v. Van Wert County Hosp.*, 246 F. Supp. 2d 808 (N.D. Ohio 2002); see also *Konica Minolta Bus. Sols., U.S.A., Inc. v. Allied Office Prods., Inc.*, No. 2:06-cv-71, 2006 U.S. Dist. LEXIS 93640, at *33 (S.D. Ohio Dec. 27, 2006) (relying on *Systran*). Courts have held that waiver may not be found unless the legal and factual issues in the original claims are the same as the claims to be arbitrated. *See Konica Minolta Bus. Sols., U.S.A., Inc. v. Allied Office Prods., Inc.*, No. 2:06-cv-71, 2006 U.S. Dist. LEXIS 93640, at *37-38 (S.D. Ohio Dec. 27, 2006) (no waiver where the counterclaims the plaintiff sought to arbitrate did not stem from the same legal and factual issues as the plaintiff's claims); *Commercial Union Ins. Co. v. Gilbane*

9

*Bldg. Co.*, 992 F.2d 386, 390 (1st Cir. 1993) (no waiver where counterclaim was distinct from plaintiff's claims); *OCMC, Inc. v. Billing Concepts, Inc.*, No. 1:05-cv-1396, 2006 U.S. Dist. LEXIS 25852 (S.D. Ind. May 3, 2006)(defendant did not waive its right to arbitrate where it had initiated a separate lawsuit against the plaintiff that involved different issues). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); see also *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 497 (6th Cir. 2020).

### A. Plaintiffs Have not Shown which of any Opt-In Plaintiffs CCM Brought Collection Actions Against and any Purported Waiver as to One Plaintiff is not a Waiver as to all.

First, each Plaintiff, named and opt-in, signed their own specific contract with CCM. Waiver applies to specific acts under a specific contractual arbitration agreement. Therefore, even if there was a purported waiver of arbitration to any Plaintiff, which there was not, that waiver would only apply to that specific Plaintiff. It would never constitute a waiver towards all Plaintiffs.

Plaintiffs do not even attempt to show that each individual Plaintiff had some specific action taken against them that somehow waived CCM's right to arbitrate the claims in this action. Instead, they solely assert that Mr. Lundholm and Mr. Rosa were sued in separate state court actions for collection on their failure to repay their sign-on bonuses. (ECF. No. 47, pp. 3-4.) But those cases were dismissed with no substantive action being

10

taken in either case, and in this case CCM's initial action was to move for arbitration. Plaintiffs have not met their burden to show CCM waived its right to arbitration.

### B. CCM's Collection Actions Did not Waive its Right to Compel Arbitration for Plaintiffs' Claims.

Further, CCM did not waive its right to arbitrate any claim by filing specific collection actions. A party does not waive its right to arbitration by filing a prior and separate collection action. *See Kathan v. Autovest, LLC*, No. 2:19-cv-00486-TC, 2019 U.S. Dist. LEXIS 170106, at *6 (D. Utah Sep. 30, 2019)(applying federal law to grant defendant's motion to compel arbitration and holding defendant did not waive its right to pursue arbitration by filing a state debt collection action); *see also Cantu v. Credit Acceptance Corp.*, No. 23-CV-520-JPS, 2023 U.S. Dist. LEXIS 149843, at *14 (E.D. Wis. Aug. 25, 2023); *Fields v. Howe*, Cause No. IP-01-1036-C-B/S, 2002 U.S. Dist. LEXIS 4515, at *28 (S.D. Ind. Mar. 14, 2002); *Cage v. CACH, LLC*, No. C13-01741RSL, 2014 U.S. Dist. LEXIS 71467, at *5 (W.D. Wash. May 22, 2014); *James v. Portfolio Recovery Assocs., LLC*, No. 14-cv-03889-RMW, 2015 U.S. Dist. LEXIS 20786, at *15 (N.D. Cal. Feb. 20, 2015); *Schwartz v. CACH, LLC*, No. 13-12644-FDS, 2014 U.S. Dist. LEXIS 9655, (D. Mass. Jan. 27, 2014); *Funderburke v. Midland Funding, L.L.C.*, No. 12-2221-JAR/DJW, 2013 U.S. Dist. LEXIS 13438, at *21 (D. Kan. Feb. 1, 2013); *Spencer v. Midland Funding LLC*, No. 3:16-cv-00093-BR, 2016 U.S. Dist. LEXIS 193256, at *11 (D. Or. Oct. 21, 2016); *Davis v. CACH, LLC*, No. 14-cv-03892-BLF, 2015 U.S. Dist. LEXIS

11

25088, at *20 (N.D. Cal. Mar. 2, 2015) (all holding the filing of a separate collection lawsuit is not a waiver of a right to compel arbitration in a separate lawsuit).[4]

Similarly, in *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 955 (N.D. Ohio 2009),[5] the court said that there was no waiver – even in the same case – when a party who has sued moves to compel arbitration after a counterclaim is filed. In that matter, the plaintiff filed a lawsuit in court, the defendant filed a counterclaim, and then the plaintiff moved to compel arbitration. *Id.*, 644 F.Supp. 2d at 957. The court specifically found that the plaintiff sought to compel arbitration soon after learning of the defendant's counterclaims. *Id.* The court reviewed the minimal discovery that occurred in the case and held that the mere filing of the lawsuit in court was not inconsistent with the parties' agreement to arbitrate. The Court enforced the arbitration provision. *Id.*[6]

---

[4] *See also Hodson v. Javitch*, 531 F. Supp. 2d 827 (N.D. Ohio 2008) (defendant's filing of collection actions in municipal court on behalf of its client did not waive the right to arbitrate because they were not inconsistent with an intent to arbitrate other claims).

[5] *Credit Acceptance* distinguishes *Worldsource Coil Coating v. McGraw Constr. Co.*, 946 F.2d 473, 477 (6th Cir. 1991), a case cited by Plaintiffs, because *Worldsource* applied Illinois law as opposed to the FAA.

[6] Plaintiffs' reference to *Cabinetree* is inapposite. In *Cabinetree*, after the defendant removed the case from state to federal court, it propounded discovery, and the plaintiff produced almost 2,000 documents. *Cabinetree of Wis. v. Kraftmaid Cabinetry*, 50 F.3d 388, 391 (7th Cir. 1995). The defendant then sought to compel arbitration eight months after the case was removed. *Id.* The Seventh Circuit upheld the district court's denial of defendant's motion to compel arbitration based on defendant's waiver from litigating the case and taking eight months to seek arbitration. *Id.* Here, CCM filed its *Motion to Compel Arbitration and to Dismiss* as its first substantive action after Mr. Lundholm filed his complaint. Plaintiffs' reference to *Morgan v. Sundance*, 142 S.Ct. 1708, 1713 (2022) is also distinguishable because the Court there held "[o]ur sole holding today is that [the Court of Appeals] may not make up a new procedural rule based on the FAA's policy favoring arbitration." As part of its holding, the Court held the Eighth Circuit erred in conditioning waiver on a showing of

Further, even under the contract signed by the parties, filing any state court suit could not waive the right to seek arbitration in another case. Specifically, the Employment Agreements contain a "no waiver" provision that states:

> No waiver by Company of any condition, or the breach of any term, covenant, representation or warranty contained herein, whether by conduct or otherwise, by Employee in any one or more instances shall be deemed or construed as a further or continuing waiver of any such term, condition, representation or warranty set forth in the Agreement. Any waiver must be in writing in order to be enforceable against Company.

(*See, e.g.*, ECF. No. 7, Ex. 1-A at § 5.4; ECF No. 21, Ex. 1-A at §. 6.4.) (*See also* Sign-on Bonus Agreement no waiver provision) (*See, e.g.*, ECF. No. 27, Ex. 2 at § 7.) Therefore, even by the agreement of the contracting parties, CCM's separate collection suits do not constitute a waiver of its right to have this case arbitrated.[7]

Finally, CCM has acted consistently with its right to compel arbitration throughout this case. Mr. Lundholm filed his Complaint on February 14, 2023, and CCM's initial response was its *Motion to Compel Arbitration and to Dismiss*. Plaintiffs do not point to any actions to show CCM somehow acted inconsistently with its demand for arbitration in this

---

prejudice. *Id*. In this case, CCM has only taken actions consistent with its right to enforce arbitration.

[7] The Sixth Circuit has limited the impact of "no waiver" provisions when a party participates in a case and then attempts to compel arbitration in that same case. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012). However, with different cases, the no-waiver provision is relevant to the consideration of the request for arbitration. *See Lobster 207, LLC v. Pettegrow*, No. 1:19-CV-00552-LEW, 2020 U.S. Dist. LEXIS 95561, at *30 (D. Me. June 1, 2020) (rejecting that prior state court litigation waived defendant's right to arbitrate employment dispute, and holding use of non-waiver clause supported the defendant's right to arbitrate).

action. CCM has acted consistently with its right to compel arbitration and did not waive any rights.

IV. CONCLUSION

For the foregoing reasons, the Court should grant CCM's *Renewed Motion to Compel Arbitration and to Dismiss*.

        Respectfully submitted,

        **KOHRMAN JACKSON & KRANTZ LLP**

        */s/ Brett S. Krantz*
        JON J. PINNEY (0072761)
        BRETT S. KRANTZ (0069238)
        JEFFREY A. VAISA (0096010)
        One Cleveland Center, 29th Floor
        1375 East Ninth Street
        Cleveland, Ohio 44114
        Phone: 216-696-8700
        Fax: 216-621-6536
        Email: jjp@kjk.com; bk@kjk.com; jrv@kjk.com

        *Counsel for Defendant CrossCountry Mortgage, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was filed electronically via the Court's electronic docketing system on November 17, 2023. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> /s/ Brett S. Krantz
> BRETT S. KRANTZ (0069238)
> *Counsel for Defendant CrossCountry Mortgage, LLC*